1  PATRICK M. RYAN (SBN 203215)
     *pryan@bzbm.com*
2  STEPHEN C. STEINBERG (SBN 230656)
     *ssteinberg@bzbm.com*
3  GABRIELLA A. WILKINS (SBN 306173)
     *gwilkins@bzbm.com*
4  BARTKO ZANKEL BUNZEL & MILLER
   A Professional Law Corporation
5  One Embarcadero Center, Suite 800
   San Francisco, California 94111
6  Telephone: (415) 956-1900
   Facsimile:  (415) 956-1152
7
   Attorneys for CISCO SYSTEMS, INC., CISCO
8  TECHNOLOGY, INC. and CIENA
   CORPORATION
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

| 13  CISCO SYSTEMS, INC., CISCO TECHNOLOGY, INC. and CIENA CORPORATION, | Case No. 5:20-cv-04773-EJD |
|---|---|
| 14 | **PLAINTIFF CIENA CORPORATION'S EMERGENCY *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ASSET FREEZE ORDER, EXPEDITED DISCOVERY, ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

13  CISCO SYSTEMS, INC., CISCO
    TECHNOLOGY, INC. and CIENA
14  CORPORATION,

15                     Plaintiffs,

16           v.

17  SHENZHEN USOURCE TECHNOLOGY CO.,
    SHENZHEN WAREX TECHNOLOGIES CO.,
18  LTD., and WAREX TECHNOLOGIES
    LIMITED,

19                     Defendants.

20

Case No. 5:20-cv-04773-EJD

**PLAINTIFF CIENA CORPORATION'S EMERGENCY *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, ASSET FREEZE ORDER, EXPEDITED DISCOVERY, ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Date:**
**Time:**
**Courtroom:     4**
**Honorable Judge Edward J. Davila**

**REDACTED VERSION OF**
**DOCUMENT SOUGHT TO BE SEALED**

21

22

23

24

25

26

27

28

2790.000/1543851.1

Case No. 5:20-cv-04773-EJD

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................2

II.    STATEMENT OF ISSUES TO BE DECIDED ..................................3

III.   STATEMENT OF RELEVANT FACTS ............................................4

    A.    Ciena and Its Transceivers ......................................................4

    B.    Counterfeit Ciena Transceivers Are Dangerous .......................5

    C.    Trademarks Used on Ciena Transceivers ................................6

    D.    Discovery and Testing of Counterfeit Ciena Transceivers ......6

        1.    Usource .........................................................................7

        2.    Warex ...........................................................................8

IV.   ARGUMENT .....................................................................................9

    A.    The Court Should Issue the Requested Relief Without Prior Notice .......................9

    B.    The Court Should Grant the Requested Immediate and Preliminary Injunctive Relief Barring Further Counterfeiting Activities by Defendants and Anyone Associated or Acting in Concert With Them ......................................11

        1.    Ciena Is Likely to Succeed on the Merits .....................12

        2.    Ciena Will Suffer Irreparable Harm as a Result of Defendants' Activities Without an Injunction ................14

        3.    The Balance of Equities Favors Ciena .........................15

        4.    An Injunction Is in the Public Interest .........................16

        5.    At Minimum, Injunctive Relief Is Warranted Because There Are Serious Questions Going to the Merits and the Balance of Hardships and Other *Winter* Factors Strongly Favor Ciena ...........................17

    C.    The Court Should Issue An Order to Freeze Defendants' Assets, Disable, Transfer Control of, and Redirect Defendants' Seller Identifications and Domain Names Used for Counterfeiting, and Bar Access to Listings and Other Fulfillment Activities for Sales of Products Using Infringing Marks ...........17

        1.    The Court Should Issue an Order Freezing Defendants' Assets .................18

        2.    The Court Should Issue an Order Freezing, Disabling, Transferring Control of, and Redirecting Defendants' Seller Identifications and Domain Names ...........................20

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

3. The Court Should Issue an Order Barring Access to Defendants' Listings and Preventing Fulfillment of Further Sales of Defendants' Products with CIENA Marks ..................................................................23

D. The Court Should Permit Ciena to Conduct Expedited Discovery..........................24

E. The Court Should Authorize Alternative Service of Process.................................26

F. The Court Should Not Require Ciena to Post a Bond to Secure the Injunctive Relief, or Alternatively, Should Set It at No More Than $10,000 ..........27

V. CONCLUSION ....................................................................................................28

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*
5     944 F.2d 1446 (9th Cir. 1991)...................................................................................... 14

6

*Accuride Int'l, Inc. v. Accuride Corp.*
      871 F.2d 1531 (9th Cir. 1989)...................................................................................... 13
7

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*
8     No. 18-CV-06663-TSH, 2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ................................ 27

9

*AMF Inc. v. Sleekcraft Boats*
10    599 F.2d 341 (9th Cir. 1979)........................................................................................ 12

11

*Animale Grp. Inc. v. Sunny's Perfume Inc.*
      256 F. App'x 707 (5th Cir. 2007)................................................................................... 19
12

*Asmodus, Inc. v. Junbiao Ou*
13    No. EDCV 16-2511 JGB (DTBx), 2017 WL 2954360 (C.D. Cal. May 12, 2017)................ 22

14

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*
15    174 F.3d 1036 (9th Cir. 1999)...................................................................................... 13

16

*Carson v. Griffin*
      No. 13-CV-0520 KAW, 2013 WL 2403601 (N.D. Cal. May 31, 2013)............................... 26
17

*Chanel, Inc. v. eukuk.com*
18    No. 2:11-CV-01508-KJD, 2011 WL 6955734 (D. Nev. Dec. 28, 2011) ......................... 21, 22

19

*Chanel, Inc. v. Sunus Online Group, LLC*
20    2014 WL 12558780 (C.D. Cal. Jan. 15, 2014)................................................................ 19

21

*Cleary v. News Corp.*
      30 F.3d 1255 (9th Cir. 1994)........................................................................................ 14
22

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*
23    321 F.3d 878 (9th Cir. 2003)....................................................................................... 27

24

*Creative Labs, Inc. v. Cyrix Corp.*
25    141 F.3d 1174 (9th Cir. 1998)...................................................................................... 16

26

*Cuviello v. City of Oakland*
      No. C 06-05517 MHP (EMC), 2007 WL 2349325 (N.D. Cal. Aug. 15, 2007)..................... 27
27

*Daimler AG v. A-Z Wheels LLC*
28    334 F. Supp. 3d 1087 (S.D. Cal. 2018) ......................................................................... 13

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

*Facebook, Inc. v. Banana Ads, LLC*
   No. C-11-3619 YGR, 2012 WL 1038752 (N.D. Cal. Mar. 27, 2012) ................................... 27

*First Tech. Safety Sys., Inc. v. Depinet*
   11 F.3d 641 (6th Cir.1993)................................................................................................. 10

*Friends of the Wild Swan v. Weber*
   767 F.3d 936 (9th Cir. 2014)........................................................................................11, 17

*FTC v. Affordable Media*
   179 F.3d 1228 (9th Cir. 1999) ........................................................................................... 19

*Gucci Am., Inc. v. Los Altos Boots, Inc.*
   2014 WL 12561613 (C.D. Cal. Aug. 27, 2014) ................................................................ 10

*Gucci Am., Inc. v. Weixing Li*
   768 F.3d 122 (2d Cir. 2014)........................................................................................19, 20

*Gucci America, Inc. v. Wang Huoqing*
   No. C-09-05969 JCS, 2011 WL 31191 (N.D. Cal. Jan. 3, 2011)........................................ 20

*Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*
   425 F.3d 708 (9th Cir. 2005)............................................................................................. 13

*Jenkins v. Pooke*
   No. C 07-03112 JSW, 2009 WL 412987 (N.D. Cal. Feb. 17, 2009) .................................. 27

*JL Beverage Co., LLC v. Jim Beam Brands Co.*
   828 F.3d 1098 (9th Cir. 2016)........................................................................................... 12

*Johnson v. Couturier*
   572 F.3d 1067 (9th Cir. 2009)........................................................................................... 18

*KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*
   408 F.3d 596 (9th Cir. 2005)............................................................................................. 12

*Lahoti v. VeriCheck, Inc.*
   586 F.3d 1190 (9th Cir. 2009)........................................................................................... 12

*Las Vegas Sands Corp. v. Fan Yu Ming*
   360 F. Supp. 3d 1072 (D. Nev. Jan. 9, 2019).................................................................... 22

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*
   51 F.3d 982 (11th Cir. 1995)............................................................................................. 19

*Lockheed Missile & Space Co. v. Hughes Aircraft*
   887 F. Supp. 1320 (N.D. Cal. 1995) ................................................................................. 11

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*
   658 F.3d 936 (9th Cir. 2011)............................................................................................. 13

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

*Mattel, Inc. v. Walking Mountain Prods.*
    353 F.3d 792 (9th Cir. 2003)................................................................................. 12

*McLeod v. Hosmer-Dorrance, Inc.*
    192 USPQ 683 (N.D. Cal. 1976)........................................................................ 14, 16

*Micron Tech., Inc. v. United Microelectronics Corp.*
    No. 17-CV-06932-MMC, 2018 WL 6069646 (N.D. Cal. Nov. 20, 2018)............................ 27

*Microsoft Corp. v. Buy More, Inc.*
    136 F. Supp. 3d 1148 (C.D. Cal. 2015)................................................................... 13

*Microsoft Corp. v. Goldah.com Network Tech. Co.*
    No. 17-CV-02896-LHK, 2017 WL 4536417 (N.D. Cal. Oct. 11, 2017) ........................ 26, 28

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*
    230 F. Supp. 3d 1161 (C.D. Cal. 2017)................................................................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.*
    339 U.S. 306, 314 (1950) .................................................................................. 26

*Neighborhood Assistance Corp. v. First One Lending Corp.*
    2013 WL 12113414 (C.D. Cal. Feb. 11, 2013) ......................................................... 16

*Nike, Inc. v. Wu*
    349 F. Supp. 3d 310 (S.D.N.Y. 2018).................................................................... 27

*Otter Prod., LLC v. Anke Grp. Indus. Ltd.*
    No. 2:13-CV-00029-MMD-RJJ, 2013 WL 5910882 (D. Nev. Jan. 8, 2013) ...................... 22

*Playboy Enters., Inc. v. Baccarat Clothing Co.*
    692 F.2d 1272 (9th Cir. 1982)........................................................................ 16, 17

*Redwen v. Sino Clean Energy, Inc.*
    No. CV 11-3936 PA, 2013 WL 12303367 (C.D. Cal. Jul. 9, 2013) ................................ 20

*Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*
    737 F. Supp. 1521 (S.D. Cal. 1989) ................................................................ 19, 20

*Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*
    970 F.2d 552 (9th Cir. 1992)..................................................................... 17, 18, 19

*Reno Air Racing Ass'n., Inc. v. McCord*
    452 F.3d 1126 (9th Cir. 2006)............................................................................ 10

*Republic of the Philippines v. Marcos*
    862 F.2d 1355 (9th Cir.1988)............................................................................ 17

*Rio Properties, Inc. v. Rio Int'l Interlink*
    284 F.3d 1007 (9th Cir. 2002)............................................................................ 26

*Sas v. Sawabeh Info. Servs. Co.*
  No. CV 11-04147 GAF (MANx), 2011 WL 13130013 (C.D. Cal. May 17,
  2011) ....................................................................................................................... 25

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*
  No. CV 15-08157-BRO (Ex), 2015 WL 6680807 (C.D. Cal. Oct. 19, 2015)........................ 25

*Semitool, Inc. v. Tokyo Electron Am., Inc.*
  208 F.R.D. 273 (N.D. Cal. 2002) ............................................................................... 24

*Spy Optic Inc. v. Individuals, Partnerships & Unincorporated Associations
  Identified on Schedule A*
  No. CV 17-7649 DSF, 2017 WL 10592133 (C.D. Cal. Nov. 27, 2017).................... 21, 23, 24

*Sream, Inc. v. Sahebzada*
  No. 18-CV-05673-DMR, 2019 WL 2180224 (N.D. Cal. Mar. 6, 2019) ........................ 14, 15

*Steinway & Sons v. Robert Demars & Friends*
  No. 80-04404 TJH, 1981 WL 40530 (N.D. Cal. Jan. 28, 1981) ............................................ 12

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*
  240 F.3d 832 (9th Cir. 2001)........................................................................................... 11

*Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co., LTD*
  No. 18-CV-823-JLS (JLB), 2018 WL 3413866 (S.D. Cal. May 10, 2018) ..................... 10, 23

*Triad Sys. Corp. v. Se. Exp. Co.*
  64 F.3d 1330 (9th Cir. 1995)........................................................................................... 15

*U-Haul Int'l, Inc. v. Jartran, Inc.*
  681 F.2d 1159 (9th Cir. 1982)........................................................................................... 16

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*
  No. C 12-2582 CW, 2012 WL 2343670 (N.D. Cal. June 20, 2012) .......................... 13, 15, 28

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*
  No. 14-CV-04050-MEJ, 2014 WL 6788310 (N.D. Cal. Dec. 2, 2014) ..................... 14, 15, 16

*Williams-Sonoma, Inc. v. Friendfinder, Inc.*
  No. C06-6572JSW (MEJ), 2007 WL 4973848 (N.D. Cal. Dec. 6, 2007)............................. 21

*Williams-Sonoma, Inc. v. Online Mktg. Servs., Ltd.*
  No. C 06-06572 JSW, 2008 WL 596251 (N.D. Cal. Mar. 4, 2008)....................................... 21

*Winter v. Natural Res. Defense Council, Inc.*
  555 U.S. 7 (2008) ................................................................................................. 11, 17

*Yee v. NIVS Intellimedia Tech. Group, Inc.*
  No. CV 11-8472 JGB, 2013 WL 1276024 (C.D. Cal. March 25, 2013)................................. 20

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

**Statutes**

15 U.S.C.

    § 1114 .................................................................................................. 3, 13
    § 1114(1) ................................................................................................... 12
    § 1114(2)(D) .............................................................................................. 22.
    § 1117 ....................................................................................................... 17
    § 1125 ......................................................................................................... 3
    § 1125(a) .................................................................................................. 13
    § 1125(a)(1) .............................................................................................. 13
    § 1125(d)(2) .............................................................................................. 22

Califormia Business and Professions Code

    § 17200 .................................................................................................. 3, 14
    § 17500 .................................................................................................. 3, 14

**Court Rules**

Federal Rules of Civil Procedure

    Rule 4(f)(3) ............................................................................................... 26
    Rule 26(d) ................................................................................................. 24
    Rule 65(b) ................................................................................................... 9

Northern District of California Local Rules

    Rule 65-1 .................................................................................................... 9

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on _____, 2020, at _____ [a.m.]/[p.m.] (or as soon thereafter as the matter may be heard) before the Honorable Judge Edward J. Davila, in Courtroom 4 of the above entitled courthouse, located at 280 South First Street, San Jose, California 95113, Plaintiff Ciena Corporation ("Ciena") will and hereby does move *ex parte* for a Temporary Restraining Order ("TRO") and, upon its expiration, a Preliminary Injunction to be heard on August 13, 2020 at 9:00 a.m., prohibiting Defendants Shenzhen Usource Technology Co. ("Usource"), and Shenzhen Warex Technologies Co., Ltd. and Warex Technologies Limited (together, "Warex") (collectively, "Defendants") from continuing to advertise, offer for sale, sell, and distribute counterfeit Ciena transceivers in the United States, and/or continuing to use the CIENA Marks in connection with advertising and selling transceivers. Ciena also seeks an order freezing Defendants' assets, disabling their online presence, and barring access to their listings and fulfillment of further sales. Ciena also seeks expedited discovery so it can identify all channels through which Defendants are manufacturing and distributing counterfeit Ciena products and locate all of Defendants' unlawfully gained assets. In addition, Ciena seeks an order authorizing alternative service of process by email, as email service is not prohibited and is reasonably calculated to provide notice when Defendants operate and do business online, and, further, personal service is presently nearly impossible. This Motion is based on the accompanying Memorandum of Points and Authorities; the supporting declarations of First Witness, Second Witness, and Third Witness,[1] and exhibits thereto; all other papers and pleadings on file; and such additional arguments and evidence as may be presented to the Court at or before a hearing on this Motion.

---

[1] Ciena is concurrently seeking leave to file these declarations partially under seal, including sealing the names of these individuals in order to preserve the secrecy of other ongoing and future investigations of counterfeiters, and to protect the individuals themselves from potential retaliation, particularly cyber-attacks.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Ciena brings this emergency *ex parte* motion to block dangerous counterfeit transceivers from entering the United States market. Ciena brings this Motion against the same counterfeiters against whom this Court already issued a TRO upon Cisco's motion. The legal and factual bases for both motions are substantially similar; thus, Ciena requests that the Court enter the requested order forthwith without the need for a hearing, and set the hearing on the Order to Show Cause regarding a Preliminary Injunction on the same date as the hearing at to Cisco—August 13, 2020. There would be no prejudice to Defendants, as they are already on notice of Cisco's substantially similar motion to be heard on that same day.

Ciena is a leading designer and manufacturer of transceivers—devices that transmit and receive data—used in public and private networks. Ciena's key customers include federal and state government entities, telecommunications companies, research and education institutions like universities and colleges, utility companies, and healthcare centers. Ciena's transceivers are a key foundational component of the U.S. communications infrastructure. The counterfeit Ciena transceivers sold by Defendants pose a serious risk of potential harm to that national infrastructure and Ciena's reputation. Since networks that provide critical services across the U.S. rely on Ciena Transceivers, the risk of using substandard counterfeit products that may fail is substantial.

Ciena recently discovered that Defendants were offering potentially fake Ciena transceivers online to U.S. customers. Ciena's consultant purchased Defendants' suspect transceivers, which they shipped to this District. Ciena analyzed and tested these transceivers and confirmed that they were inauthentic, i.e., these products were not made by or associated with Ciena despite being passed off to unsuspecting consumers as Ciena products. On the outside, Defendants' transceivers are advertised, offered for sale, and/or have product labels with counterfeit CIENA Marks, and are otherwise designed to create the impression that they are authentic Ciena Transceivers. Internally, the transceivers use unapproved, untested, and non-genuine parts, and are not subjected to Ciena's high design, build, and inspection standards.

2790.000/1543851.1

2

Case No. 5:20-cv-04773-EJD

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Ciena seeks to bar these dangerous counterfeit products from the U.S. by bringing this action for trademark infringement, counterfeiting, and false designation of origin and advertising and dilution under the federal Lanham Act (15 U.S.C. §§ 1114, 1125), and unfair competition and false advertising under California law (Cal. Bus. & Prof. Code §§ 17200, 17500).

Ciena seeks four types of relief, which have been granted by this Court and others in this Circuit in counterfeiting actions, in order to promptly stop Defendants from selling counterfeit products in the U.S., preserve evidence and the potential to recover any ill-gotten gains from past sales, and give notice of this case to Defendants. First, Ciena seeks a TRO and preliminary injunction barring Defendants from using the CIENA Marks and selling transceivers designed to appear to be Ciena products. Second, to preserve the ability to recover any profits Defendants earned from their infringement and maintain the status quo, Ciena seeks an order freezing Defendants' assets, disabling their seller identifications and domain names, and shutting down their ability to offer or sell any fake Ciena products online or ship them to U.S. customers. Third, Ciena seeks limited expedited discovery to locate and remove from the market any other infringing products being sold in the U.S., and locate Defendants' profits from past sales. Fourth, given the difficulty in serving process and risk of extensive delays in China, particularly during the COVID-19 crisis, Ciena requests authorization to effect service of process by email.

## II.    STATEMENT OF ISSUES TO BE DECIDED

A.    Should Ciena be permitted to file the motion and should the Court issue the requested relief *ex parte* before notice to Defendants, who are likely to conceal or dispose of the counterfeit goods, proceeds, or records if given prior notice?

B.    Should the Court issue a temporary restraining order and order to show cause why a preliminary injunction should not be issued barring further infringing activities by Defendants when Ciena has shown it is almost certain to succeed on the merits of its claims, it would be irreparably harmed by continued infringement, and the balance of equities and public interest also strongly favor injunctive relief?

C.    Should the Court issue an Order to freeze Defendants' assets, disable, transfer control of, and redirect Defendants' seller identifications and domain names used to sell counterfeit products, and bar access to listings and other fulfillment activities for sales of products with infringing marks, to preserve the possibility of all potential equitable remedies and prevent further infringement under new names?

D.    Should the Court issue an Order permitting Ciena to conduct certain narrowly focused expedited discovery when they need it to ascertain the full extent of Defendants' infringement and there would be little or no prejudice to Defendants?

E.     Should the Court authorize alternative service of process on Defendants by email when it is not prohibited by international agreement and is reasonably calculated to give Defendants notice?

F.     Should the Court require Ciena to post a bond to secure the requested injunctive relief when there is no risk of harm to Defendants from simply being precluded from selling counterfeit products?

## III.    STATEMENT OF RELEVANT FACTS

### A.    Ciena and Its Transceivers

Ciena has been selling networking equipment, including transceivers ("Ciena Transceivers"), since 1992. *See* 7/31/20 Decl. of First Witness ("Decl. No. 1") ¶ 5. Ciena is a national and world leader in developing, designing, manufacturing, and providing telecommunications networking equipment, software, and services. *Id.* Ciena sells and ships over 300,000 transceivers generating over $300 million in revenue per year. *Id.*

Transceivers are electronic devices that transmit and receive data. *See* 8/5/20 Decl. of Second Witness ("Decl. No. 2") ¶ 7. In basic terms, a transceiver encodes and decodes data by converting an electrical signal into light pulses and back again, which are sent through a fiber optic cable. *Id.* Transceivers provide the vital connections in networks. *See* Decl. No. 1 ¶ 11. The quality and performance of networks in the U.S. and around the world depend on authentic and high-quality Ciena Transceivers. *Id.* ¶¶ 11-12. Ciena sells a wide-range of transceivers varying in size, functionality, and price. *See* Decl. No. 2 ¶ 7. Ciena designs all of its transceivers to meet and exceed industry standards for quality, reliability, safety, and performance, which vary depending on the industry. *Id.* A variety of U.S. industries, including federal and state government entities, telecommunications companies, research and education institutions like universities and colleges, utility companies, and major healthcare centers, rely on Ciena Transceivers to perform critical applications, and ensure the integrity of data transfer and communications. *See* Decl. No. 1 ¶ 12.

Authentic Ciena Transceivers are manufactured by well-vetted third-party vendors called original equipment manufacturers ("OEMs"). *See* Decl. No. 2 ¶ 8. Each of these OEMs utilize specialized equipment and heavily tested processes to produce consistent, high-performing products on which users rely. *Id.* Ciena requires its OEMs to follow strict quality and control standards that govern the entire lifecycle of each transceiver. *Id.* ¶ 9. Each model undergoes

1   multiple kinds of testing before going into production. Each OEM must maintain ongoing

2   reliability monitoring and is subject to stringent audits and regular business reviews to ensure

3   quality standards continue to be met and to identify areas for improvement. *Id.* And OEMs must

4   maintain detailed records for each product and its movement through the supply chain to enable

5   Ciena to support customers via serial number traceability. *Id.*

6       **B.      Counterfeit Ciena Transceivers Are Dangerous**

7           Defendants' transceivers are confusingly similar to Ciena's genuine products. Defendants'

8   transceivers are marketed and sold using and/or bear counterfeit and confusingly similar imitations

9   of the CIENA Marks, or are otherwise designed to create the impression that they are authentic

10  Ciena products. *See generally* 8/5/20 Decl. of Third Witness ("Decl. No. 3"). In fact, these

11  counterfeit transceivers are not manufactured by Ciena or any party associated with, or authorized,

12  licensed, or approved by Ciena. *See* Decl. No. 2 ¶ 14; Decl. No. 1 ¶ 13. Defendants deceive

13  customers by delivering inferior counterfeit products instead of high-quality genuine Ciena

14  products. Decl. No. 1 ¶¶ 14-18; Decl. No. 2 ¶¶ 18, 23.

15          The counterfeit transceivers sold by Defendants pose significant dangers. As counterfeits

16  use untested and unapproved components and manufacturing processes, they may not function

17  properly or in combination with authentic Ciena products and components in a network, may be

18  unsafe to use, and/or may lead to network performance degradation. Decl. No. 1 ¶¶ 14-17.

19  Reliability and data integrity are critical to industries that use Ciena Transceivers, and counterfeit

20  transceivers jeopardize the integrity of these networks and threaten the people they serve. *Id.* ¶ 18.

21  Counterfeit transceivers also pose a risk of physical harm. Ciena Transceivers use transmitter laser

22  technologies, which require eye safety testing and manufacturing calibration to ensure users'

23  physical safety. *Id.* Counterfeit transceivers are unlikely to be subjected to this testing or meet

24  these standards. *Id.* A poorly designed transceiver can also emit excessive electromagnetic energy

25  that interferes with adjacent equipment, which could be detrimental in a sensitive environment,

26  e.g., a healthcare center. *Id.* Packaging transceivers so as to prevent electrostatic discharge

27  ("ESD") from harming them is also crucial to maintaining their reliability, and Defendants'

28  counterfeit transceivers are not packaged with any such precautions, making it more likely they

1  may not function properly and/or will fail. *Id.*; Decl. No. 2 ¶¶ 18, 23. Substandard components in

2  Defendants' counterfeit transceivers are also more likely to operate at a higher power, potentially

3  overheat and take out network transmission or degrade and cause failures. Decl. No. 1 ¶ 18.

    **C.**    **Trademarks Used on Ciena Transceivers**

5      Ciena has invested heavily in the CIENA brand, which includes the "CIENA" word mark,

6  which is registered with the U.S. Patent and Trademark Office under U.S. Trademark Registration

7  Nos. 2,070,330 and 3,026,860, and the following CIENA logo (together, the "CIENA Marks"):

# ciena

11  *Id.* ¶¶ 6-10, Ex. 1A. Ciena has used, and is currently using, the CIENA Marks continuously and

12  exclusively in commerce, including in connection with its sale of Ciena Transceivers, and plans to

13  continue such use in the future. *Id.* ¶ 8. Ciena prominently displays the CIENA Marks in its

14  advertising materials, and as a result, the CIENA Marks are widely recognized and well-known to

15  the public, and are synonymous with reliable, high-quality networking hardware products. *Id.* ¶ 9.

16  Ciena has spent, and continues to spend, millions of dollars marketing and promoting in interstate

17  commerce its products in connection with the CIENA Marks. *Id.* Due to Ciena's longtime use of

18  and investment in the CIENA Marks and the quality of Ciena's products, the Ciena brand has built

19  up a tremendous amount of consumer goodwill. *Id.* ¶ 10. The CIENA Marks symbolize this

20  goodwill, and are invaluable assets to Ciena. *Id.*

    **D.**    **Discovery and Testing of Counterfeit Ciena Transceivers**

22      The success of Ciena's brand has attracted criminal counterfeiters who illegally profit by

23  selling fake Ciena products. To combat this, Ciena investigates suspicious listings on online

24  marketplaces, and in this case, arranged for a consultant to buy suspect Ciena transceivers from

25  Defendants. *See* Decl. No. 2 ¶ 13; Decl. No. 3 ¶¶ 3-4, 6. Defendants delivered transceivers

26  purchased by Ciena's consultants to an address in ████████████████, and the consultant

27  then shipped the products to Ciena for testing. Decl. No. 2 ¶ 14; Decl. No. 3 ¶¶ 6, 29-30.

28

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    Counterfeiters use different methods to avoid detection. ████████████

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████. Decl. No. 3 ¶ 5. ████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ██████████████████████████████████████████. *Id.* ¶¶ 5, 20. ████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████ *Id.*

11   Ciena has engineers who can test potentially counterfeit products, using specialized tools

12   and product data to compare suspect products with authentic products. Decl. No. 2 ¶¶ 10-12. A

13   Ciena expert in product testing, analysis, and authentication, analyzed each transceiver received

14   from Defendants to determine whether it was genuine. *See generally* Decl. No. 2. As set forth

15   below, Ciena's engineer personally evaluated each product using Ciena's standard techniques for

16   evaluating potential counterfeits, and determined that each of Defendants' products was, in fact,

17   inauthentic in that it was indisputable that it had not been manufactured by Ciena or by someone

18   associated with Ciena. *Id.*

19        **1.    Usource**

20        In May 2020, Ciena's consultant ordered two purported Ciena transceivers from Usource.

21   *See* Decl. No. 3 ¶¶ 7-10. Ciena's consultant first sent out a general request on the Alibaba platform

22   for a quotation for two transceivers with certain specifications, but not specifically Ciena-brand

23   transceivers. *Id.* ¶ 8. Usource responded offering such transceivers for $13 per unit ████████

24   ████████████████████   *Id.* ¶ 9. Ciena's consultant then asked to order two samples, and asked

25   about Usource's supply capacity per month and discounts for high volume orders of the Ciena

26   transceivers. *Id.* Usource responded that it would cost $12 per unit for ordering 100 units or more,

27   and that Usource had the capacity to manufacture and/or sell 50,000 units per month of this model.

28

2790.000/1543851.1

7

Case No. 5:20-cv-04773-EJD

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1    *Id.* Usource sent an invoice for two "Ciena" transceivers, and sent them to Ciena's consultant in

2    ███████████████████, who found they were labelled with the CIENA Marks as shown below:



10   *Id.* ¶ 9, 15. Ciena's consultant then sent the purported Ciena transceivers to Ciena for examination.

11   *See id.* ¶¶ 29-30; Decl. No. 2 ¶¶ 15-16.

12           On July 6, 2020, Ciena's engineer examined one of the suspect purported Ciena

13   transceivers received from Usource. *See* Decl. No. 2 ¶ 17. As shown above, the suspect transceiver

14   had a label with the Ciena name and logo. *Id.*; Decl. No. 3 ¶ 15. However, Ciena's engineer

15   confirmed that the product was clearly inauthentic in that it was not manufactured by Ciena or by

16   someone associated with Ciena in light of the many differences between it and authentic Ciena

17   Transceivers. *See* Decl. No. 2 ¶¶ 17-18. These differences include, but are not limited to: ████

18   ████████████████████████████████████████████████████████████████████

19   █████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████. *Id.* ¶ 18.

21           **2.      Warex**

22           In May 2020, Ciena's consultant ordered four purported Ciena transceivers from Warex.

23   *See* Decl. No. 3 ¶¶ 18-23. Warex advertised and offered these transceivers using the CIENA

24   Marks as if they were genuine Ciena Transceivers, and also advertised that they could customize

25   labels. *Id.* ¶ 18, 20. Ciena's consultant emphasized that ██████████████████████████

26   ██████████████████████████████████████████████████████████████

27   ████████████████████████████████████████. *Id.* ¶ 20

28   (emphasis added). Warex responded that ███████████████████

1   ██████████████████████████████████████████████████████████

2   ████████████████████████████████████████████ *Id.* This is consistent with

3   one way counterfeiters avoid prosecution in China ████████████████████████

4   ██████████████████████████████████████████ *Id.* The communications with

5   Warex, however, make clear that it knew the products were intended to be passed off to end

6   customers as genuine Ciena and not third-party products. Warex's invoice confirmed that the order

7   was for two units each of the "XCVR-S10V31-C" and "XCVR-S00Z85-C" (nearly identical to

8   Ciena part numbers) that were "Ciena-compatible." *Id.* ¶¶ 21-22. Warex sent the products to

9   Ciena's consultants in ███████████████████ who then forwarded them to Ciena for

10  examination. *Id.* ¶¶ 6, 29-30; Decl. No. 2 ¶¶ 19-20.

11       On July 6, 2020, Ciena's engineer examined one of each model of the purported Ciena

12  transceivers received from Warex. *See* Decl. No. 2 ¶ 21. Each suspect transceiver had a ████████

13  █████████████████████████████████ *Id.* However, for both suspect transceivers received

14  from Warex, Ciena's engineer confirmed that the products were clearly inauthentic as they were

15  not manufactured by Ciena or by someone associated with Ciena in light of the many differences

16  between them and authentic Ciena Transceivers. *Id.* ¶¶ 21-23. These differences include, but are

17  not limited to: █████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████ *Id.* ¶ 23. Ciena's engineer also provided the serial

22  numbers to the purported OEM, ███████████, which confirmed that the serial numbers do not

23  correspond to genuine Ciena Transceivers. *Id.* ¶ 22.

24  **IV.     ARGUMENT**

25       **A.     The Court Should Issue the Requested Relief Without Prior Notice**

26       Based on substantially similar facts and law as Cisco previously successfully moved, Ciena

27  moves the Court to issue a TRO and other relief *ex parte* pursuant to Federal Rules of Civil

28  Procedure 65(b) and L.R. 65-1, so that Defendants do not disappear and dispose of their infringing

goods and ill-gotten gains, as has happened with other counterfeiters. *See* Decl. No 1 ¶ 20. The Ninth Circuit approves issuing *ex parte* TROs where notice would render further prosecution fruitless, e.g. "[i]n the trademark arena, such cases include situations where an alleged infringer is likely to dispose of the infringing goods before the hearing." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). An applicant can justify excusal of the notice requirement on this ground by showing "'that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history.'" *Id.* (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 651 (6th Cir.1993)).

For example, in *Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co., LTD*, the defendants sold their infringing products through online eCommerce marketplaces, including Amazon and eBay, and the plaintiff had tried to stop similar sellers, only to see the same goods reappear under new sellers. No. 18-CV-823-JLS (JLB), 2018 WL 3413866, at *4 (S.D. Cal. May 10, 2018). The court also noted nine other cases where TROs were granted against similar online infringers who used eCommerce marketplaces to sell their infringing products. *Id.* Thus, the court found that notice to the defendants would likely result in the disappearance or transfer of the counterfeit products, so notice was not required and the plaintiff could proceed *ex parte*. *Id.*

Similarly, in *Gucci Am., Inc. v. Los Altos Boots, Inc.*, the court excused the plaintiff from providing notice before issuing a TRO because: 1) the defendant could easily conceal the counterfeit goods and related records given their nature and location outside the U.S.; and 2) similarly situated defendants in trademark infringement cases have a history of ignoring court orders to preserve and instead destroying evidence after *ex parte* TROs and seizure orders were denied. No. CV1406680 BRO (AJWX), 2014 WL 12561613, at *3-4 (C.D. Cal. Aug. 27, 2014).

Defendants in the present case are engaging in the same malfeasance as the counterfeiters confronted in *Talavera* and *Gucci*. Defendants are willfully advertising and selling transceivers using counterfeit CIENA Marks or otherwise designed to create the impression that they are authentic Ciena Transceivers, largely through storefronts on third-party eCommerce websites like Alibaba. Ciena has been combatting similar counterfeiters on the same and similar websites, but to little avail because when these websites disable infringing listings or the counterfeiters otherwise

get notice, the same goods often quickly reappear in new listings or on new eCommerce sites with new seller names and identifications. *See* Decl. No. 1 ¶ 21.

Defendants are not only able and likely to conceal their counterfeit goods and related evidence if they receive prior notice of the TRO and other relief sought by Ciena, but they are also likely to do so in a way that enables them to continue business as usual. Their location in China, where it is difficult to serve defendants (*see* infra, p. 27) and nearly impossible to enforce a judgment (*see* infra, pp. 19-20), also increases the ease with which they can hide both counterfeit goods and resulting profits. Ciena respectfully submits that it has made a sufficient showing that notice would render further prosecution fruitless and Defendants are likely to dispose of their infringing goods because "persons similar to" Defendants have a long history of doing so. Thus, the Court should excuse Ciena from the notice requirements and allow it to proceed *ex parte*.

**B.**  **The Court Should Grant the Requested Immediate and Preliminary Injunctive Relief Barring Further Counterfeiting Activities by Defendants and Anyone Associated or Acting in Concert With Them**

Ciena first seeks a temporary restraining order and order to show cause why a preliminary injunction should not issue to put an immediate stop to Defendants' advertising, offering for sale, sales, and distribution of counterfeit Ciena transceivers and use of the CIENA Marks in such activities, and ensure that evidence, including the counterfeit products themselves, is preserved.

The standard for issuing a TRO is identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). A plaintiff seeking preliminary injunctive relief must establish that: (1) "[it] is likely to succeed on the merits"; (2) "[it] is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted)

11                                        Case No. 5:20-cv-04773-EJD

(emphasis in original). Preliminary injunctive relief is routinely granted in cases involving trademark infringement. The principle "that trademark infringement causes irreparable injury and necessitates immediate injunctive relief" is well settled and "is universally recognized in the courts of [the Ninth] circuit." *Steinway & Sons v. Robert Demars & Friends*, No. 80-04404 TJH (Mx), 1981 WL 40530, at *7 (N.D. Cal. Jan. 28, 1981). Defendants are selling potentially dangerous counterfeit transceivers to U.S. customers, so there is a clear need for immediate injunctive relief.

### 1.    Ciena Is Likely to Succeed on the Merits

Ciena accuses Defendants of trademark infringement, counterfeiting, and false designation of origin and advertising under the federal Lanham Act, and unfair competition and false advertising under California law, by unauthorized use of the CIENA Marks and selling transceivers designed to appear as if they were genuine Ciena products. A plaintiff claiming trademark infringement under the Lanham Act must show it "owns a valid mark, and thus a protectable interest" and that Defendants' "use of the mark 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (quoting *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)); *see also* 15 U.S.C. § 1114(1). Ciena has established that it owns trademark registrations for the CIENA Marks. Decl. No. 1 ¶¶ 5-10, Ex. 1A. And Ciena has shown that Defendants are using those marks in connection with selling inauthentic Ciena transceivers in the U.S.

"To determine whether a likelihood of consumer confusion exists," courts in the Ninth Circuit rely "on the eight-factor *Sleekcraft* test, which reviews: (1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)), abrogated in part on other grounds by *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003)). "The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a rote checklist." *Id.* (internal quotation marks and citation omitted).

Proving false designation of origin based on the same or similar trade names or symbols requires the same showing of a likelihood of confusion. *See Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534-35 (9th Cir. 1989) ("[T]he same broad standards of protection apply to trademarks and trade names. … "[L]ikelihood of confusion is unquestionably the key to a finding of infringement in either case."); *see also* 15 U.S.C. § 1125(a)(1); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 n.8 (9th Cir. 1999) (noting that while Lanham Act § 32 (15 U.S.C. § 1114) protects registered marks, § 43(a) (15 U.S.C. § 1125(a)) also protects against infringement of unregistered marks and trade dress and against a wider range of practices such as false advertising, but "the analysis under the two provisions is oftentimes identical"). The Ninth Circuit has held that the *Sleekcraft* test is also appropriate to determine likelihood of confusion regarding a claim for false designation of origin. *Accuride,* 871 F.2d at 1536.

But courts in this district and around the Ninth Circuit hold that in cases involving counterfeiting, "it is unnecessary to perform the eight-factor evaluation because counterfeit marks are inherently confusing." *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2012 WL 2343670, at *14 (N.D. Cal. June 20, 2012); *Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1157 (C.D. Cal. 2015), *aff'd*, 703 F. App'x 476 (9th Cir. 2017); *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1096 (S.D. Cal. 2018). A counterfeit mark is: "(1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 946 (9th Cir. 2011) (citing *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005)). This is a counterfeiting case in which Defendants used identical marks in connection with, supposedly, the same goods. Thus, there is a likelihood of confusion as a matter of law.

Ciena also meets the *Sleekcraft* factors to show a likelihood of confusion. Ciena has used its trade name and the CIENA Marks since 1992 in connection with networking products, including transceivers, so the marks are strong (*Sleekcraft* factor 1). Defendants are selling the same kinds of products as Ciena—transceivers (factor 2)—and using identical marks and trade names in their advertising and/or on the products themselves (factor 3). And the use of identical

marks and trade names to sell counterfeit products shows Defendants intend to confuse the public (factor 7). Ciena is likely to succeed on the merits of its federal trademark infringement, false designation of origin, and unfair competition claims.

As for Ciena's parallel claims for unfair competition and false advertising under California state law, "[the Ninth] Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). "An action for unfair competition under Cal. Bus. & Prof. Code §§ 17200 et seq. is substantially congruent to a trademark infringement claim under the Lanham Act. . . . Under both, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (internal quotation marks omitted).

Similarly, where plaintiffs establish that they are likely to succeed on the merits of federal Lanham Act claims, then they also demonstrate a likelihood of success on parallel false advertising claims under California law. *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2014 WL 6788310, at *16–17 (N.D. Cal. Dec. 2, 2014) (finding showing of likelihood of success under the Lanham Act sufficient to meet burden for unfair competition under Section 17200 and false advertising under Section 17500). As Ciena has shown it is likely to succeed on the merits of its federal claims, Ciena has also shown it is likely to succeed on its parallel claims for unfair competition and false advertising under California law.

**2.      Ciena Will Suffer Irreparable Harm as a Result of Defendants' Activities Without an Injunction**

Where a plaintiff alleging trademark infringement shows "a high probability of confusion," it also "supports a finding of irreparable injury in the sense that it may not be fully compensable in damages." *McLeod v. Hosmer-Dorrance, Inc.*, 192 USPQ 683, 686 (N.D. Cal. 1976). The "loss of control over business reputation and damage to goodwill" constitutes irreparable injury supporting injunctive relief for trademark infringement. *Sream, Inc. v. Sahebzada,* No. 18-CV-05673-DMR, 2019 WL 2180224, at *9 (N.D. Cal. Mar. 6, 2019), *report and recommendation adopted,* No. 18-

1   CV-05673-RS, 2019 WL 2180215 (N.D. Cal. Mar. 28, 2019); *see also Ubiquiti Networks,* 2012

2   WL 2343670, at *15 (where defendants sold counterfeit products, finding imminent danger of

3   irreparable injury and no adequate remedy at law, and issuing TRO as sales would likely damage

4   plaintiff's reputation and goodwill). In *Sream*, the plaintiff alleged it invested and built goodwill in

5   its brand and that its products were superior, while the defendant sold counterfeit products that

6   misled consumers and harmed the plaintiff's reputation and goodwill by being inferior. This

7   showed a risk of irreparable harm justifying an injunction. *Id.*

8         Similarly here, Ciena has spent decades investing in and building the goodwill in its brand

9   and reputation for designing, making, and selling high-quality products. Defendants' sales of

10   counterfeit transceivers mislead customers, and threaten irreparable harm to Ciena's goodwill that

11   cannot be adequately redressed with money. *See* Decl. No. 1 ¶¶ 13-19. This is particularly so when

12   Defendants' products were not subject to the same quality control measures and safety testing as

13   genuine Ciena Transceivers. *See* Decl. No. 2 ¶¶ 8-9, 18, 23. In fact, Ciena has experienced these

14   issues with counterfeit and inferior transceivers in the past. *See* Decl. No. 1 ¶ 20.

15              **3.      The Balance of Equities Favors Ciena**

16         A TRO or preliminary injunction will impose no legally cognizable hardship on

17   Defendants. "'Where the only hardship that the defendant will suffer is lost profits from an activity

18   which has been shown likely to be infringing, such an argument in defense "'merits little equitable

19   consideration.'" *Sream*, 2019 WL 2180224, at *10 (quoting *Triad Sys. Corp. v. Se. Exp. Co.*,

20   64 F.3d 1330, 1338 (9th Cir. 1995) (superseded on other grounds)); *see also United Tactical Sys.*,

21   2014 WL 6788310, at *23 (disregarding claimed hardship from loss of infringing sales).

22   Defendants have no right to sell counterfeit Ciena transceivers or use the CIENA Marks; thus, any

23   hardship of their being barred from doing so must be disregarded. At the same time, every sale of

24   a counterfeit transceiver by Defendants is a lost sale for Ciena that detracts from the value of its

25   trademarks and goodwill and risks serious and irreparable harm to its reputation (not to mention

26   the public) by being a potentially dangerous product. Accordingly, the balance of equities strongly

27   supports issuing a TRO and preliminary injunction in this case.

28

1

### 4.     An Injunction Is in the Public Interest

2      In evaluating the public interest in enjoining suspected counterfeiters, courts should be

3   mindful that despite the false view that "intellectual property disputes" concern fights between

4   "two faceless entities," public policy strongly supports shutting down counterfeiters to protect

5   end-consumers. *Neighborhood Assistance Corp. v. First One Lending Corp.*, 2013 WL 12113414,

6   at *5 (C.D. Cal. Feb. 11, 2013). This is so because "the policy justification for trademark law is to

7   protect *human beings*," and "the purpose of the Lanham Act is 'to protect the public' from false

8   and deceptive practices that create confusion in the marketplace." *Id.* (emphasis in original)

9   (quoting *U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir. 1982)). The Ninth

10   Circuit has explained that "the consuming public is equally injured by an inadequate judicial

11   response to trademark infringement," so "it is essential that the trial courts carefully fashion

12   remedies which will take all the economic incentive out of trademark infringement." *Playboy

13   Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982).

14      The Ninth Circuit has further held that a preliminary injunction barring probable trademark

15   infringement "serve[s] the public interest by avoiding customer confusion-an important

16   consideration in trademark cases." *Creative Labs, Inc. v. Cyrix Corp.*, 141 F.3d 1174 (9th Cir.

17   1998); *see also United Tactical Sys.,* 2014 WL 6788310, at *23–24 ("the public interest is served

18   by an injunction to prevent consumer confusion and misleading advertising"); *Moroccanoil, Inc. v.

19   Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1178 (C.D. Cal. 2017) (granting preliminary injunction

20   and noting there were "serious questions as to whether consumers [were] likely [to] be confused

21   between the products, the public interest factor weigh[ed] in favor of issuing an injunction.").

22      Protecting the public interest is especially important here where government agencies,

23   telecommunications and utility companies, and healthcare centers, that are fundamental to the

24   functioning of the U.S. economy and the health of many Americans, depend on authentic Ciena

25   Transceivers to provide reliable communications. *See McLeod*, 1976 WL 21104, at *1 (finding "a

26   greater public interest in insuring that no confusion exists as to the source of plaintiff's and

27   defendant's products" and issuing preliminary injunction in case involving medical devices).

28   Thus, the public interest favors granting the requested TRO and preliminary injunction.

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

**5.    At Minimum, Injunctive Relief Is Warranted Because There Are Serious Questions Going to the Merits and the Balance of Hardships and Other *Winter* Factors Strongly Favor Ciena**

Even if the Court found that Ciena fell short of showing it is likely to succeed on the merits, Ciena would still be entitled to a TRO and preliminary injunction. As noted above, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan*, 767 F.3d at 942 (internal quotation marks and citations omitted). Here, Ciena has at least raised serious questions on the merits of its claims by submitting detailed evidence that Defendants used counterfeit CIENA Marks to sell inauthentic Ciena transceivers . As shown above, the balance of hardships and public interest strongly favor Ciena, and it has also shown that there is a risk of irreparable harm in the absence of an injunction. Thus, Ciena is also entitled to a TRO and preliminary injunction under the secondary standard set forth above.

**C.    The Court Should Issue An Order to Freeze Defendants' Assets, Disable, Transfer Control of, and Redirect Defendants' Seller Identifications and Domain Names Used for Counterfeiting, and Bar Access to Listings and Other Fulfillment Activities for Sales of Products Using Infringing Marks**

The Ninth Circuit holds that when a plaintiff seeks equitable remedies under the Lanham Act, including recovery of a defendant's profits under 15 U.S.C. § 1117, a district court has "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief." *Reebok Int'l, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). This includes "'the power to issue a preliminary injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies.'" *Id.* (quoting *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1364 (9th Cir.1988) (en banc)). The Ninth Circuit explained "'it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement,'" and affirmed the district court's granting of TROs and preliminary injunctions to freeze the defendants' assets, in addition to preventing various counterfeiting-related activities. *Id.* at 559 (quoting *Playboy Enters.,* 692 F.2d at 1275).

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

Ciena seeks an order providing various types of injunctive relief that are ancillary to the Court's ability to private final relief, each of which is routinely granted in cases involving counterfeiting online, including: 1) freezing Defendants' assets to preserve the possibility of equitable relief, including an effective accounting and return of Defendants' fraudulently obtained profits; 2) disabling and transferring control of Defendants' seller identifications on third-party eCommerce websites and domain names to Ciena to prevent further infringement; and 3) barring access to and sales of counterfeit products on third-party eCommerce websites, as well as other third-party activities that facilitate the illegal sales, to effectively prevent further infringement.

This relief will ensure that Ciena can potentially obtain the full scope of equitable relief to which it is entitled, while removing Defendants' ability to market and sell the counterfeit products to customers in the United States. It will also incentivize Defendants to appear in this litigation rather than simply ignoring it and changing their names or moving their assets and sales to a new entity, as often happens with overseas counterfeiters, particularly in countries like China where it is difficult or impossible to enforce a U.S. judgment. *See* Decl. No. 1 ¶ 20.

### 1. The Court Should Issue an Order Freezing Defendants' Assets

Ciena first seeks an order freezing Defendants' assets to preserve the possibility of equitable relief, including an accounting and return of their ill-gotten gains from counterfeiting. Ciena has already met the standards for granting a TRO and preliminary injunctive relief as to Defendants' counterfeiting activities. In addition, "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). Given the deceitful and secretive nature of counterfeiting, courts in the Ninth Circuit regularly find that dissipation of assets is likely and grant asset freezes in cases involving willful counterfeiting, particularly overseas where defendants can hide assets from a potential judgment.

For example, *Reebok* involved an alleged scheme to "sell counterfeit REEBOK shoes in Mexican border towns (such as Tijuana)." *Reebok*, 970 F.2d at 554. In freezing the defendants' assets, the district court found that "[d]ue to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-

gotten funds." *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989), *aff'd*, 970 F.2d at 563; *see also FTC v. Affordable Media*, 179 F.3d 1228, 1236–37 (9th Cir. 1999) (finding dissipation likely based on defendants keeping funds in the Cook Islands).

Similarly, in *Chanel, Inc. v. Sunus Online Group, LLC*, the defendants sold counterfeit handbags and wallets online. No. EDCV 13-2194 JGB (DTBx), 2014 WL 12558780, at *1 (C.D. Cal. Jan. 15, 2014). The court found "based on Defendants' blatant violations of trademark laws there is likelihood that Defendants would transfer or hide the illegally obtained assets in order to avoid a judgment in this action," and thus, granted a preliminary injunction freezing their assets. *Id.* at *3 (noting that while this "may harm [the defendants], when weighing this harm against the counterfeiting activities that have harmed Chanel, the balance of equities tips in Chanel's favor.")

Other Circuits agree that asset freezes are warranted to preserve assets in counterfeiting cases, particularly overseas and/or online. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987-88 (11th Cir. 1995) (affirming preliminary injunction freezing assets of U.S.-based defendants who arranged for making counterfeit Levi's jeans in China for sale in Europe); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 132-33 (2d Cir. 2014) (confirming trial authority to issue TRO and preliminary injunction freezing assets of defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeits).

Ciena seeks recovery of Defendants' profits from their wrongful use of the CIENA Marks in connection with sales of transceivers, among other relief, so the Court is authorized to freeze Defendants' assets under *Reebok*, 970 F.2d at 559. *See* Dkt. 1 (Compl.) at Prayer for Relief ¶¶ J-K. The present action involves blatant unauthorized use of the CIENA Marks by Defendants, including in their advertising for transceivers and sometimes on the transceivers themselves, and Defendants are based in China and use third-party eCommerce online platforms like Alibaba to market and sell their non-genuine Ciena products into the U.S.

It is not only likely that Defendants can and will dissipate their assets during the pendency of this case if given the opportunity to do so, but it is also difficult if not impossible to enforce U.S. judgments in China. *See, e.g.,* https://travel.state.gov/content/travel/en/legal/travel-legal-

considerations/internl-judicial-asst/Enforcement-of-Judges.html (noting no treaty or convention

provides for reciprocal recognition and enforcement of judgments); *Yee v. NIVS Intellimedia Tech.*

*Group, Inc.*, No. CV 11-8472 JGB (AJWx), 2013 WL 1276024, at *5 (C.D. Cal. March 25, 2013)

(stating that the Chinese company whose executives are Chinese residents "bore no real risk of

sanctions" given the difficulty of enforcing a U.S. judgment against a Chinese national);

*Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at *5-6 (C.D.

Cal. Jul. 9, 2013) (finding that the plaintiff "would face significant obstacles in enforcing any

judgment against the defendants' assets in China"); *Gucci America, Inc. v. Wang Huoqing*, No. C-

09-05969 JCS, 2011 WL 31191, at *16 (N.D. Cal. Jan. 3, 2011) (noting that enforcing a judgment

may be difficult in China, and compelling transfer of counterfeiter's domain names to plaintiffs).

Thus, the Court should issue the requested order freezing Defendants' assets to preserve the

possibility of equitable relief, including an accounting and return of their profits from

counterfeiting.

The Court's authority is not limited to freezing specific identified assets, nor to assets

within this District or the U.S., and can extend to banks and other non-parties that have custody of

Defendants' assets or provide payment services to Defendants. *See Reebok*, 737 F. Supp. at 1527–

28 (TRO and preliminary injunction that "any banks, savings and loan associations, or other

financial institutions … who receive actual notice of this order by personal service or otherwise,

are preliminarily enjoined from transferring, disposing of, or secreting any money, stocks or other

assets of these defendants, until further order of the court" except in limited circumstances); *Gucci*

*Am., Inc.*, 768 F.3d at 133 (rejecting argument that plaintiff had to identify particular property

derived from counterfeiting before obtaining TRO and preliminary injunction freezing all assets).

### 2.   The Court Should Issue an Order Freezing, Disabling, Transferring Control of, and Redirecting Defendants' Seller Identifications and Domain Names

Defendants are knowingly, intentionally, and willfully advertising, offering for sale,

selling, and distributing transceivers using counterfeit CIENA Marks. As far as Ciena is presently

aware, Defendants engage in these illicit activities through two primary channels on the Internet:

a) stores on third-party eCommerce marketplaces such as Alibaba ("eCommerce Websites"), using

their respective seller identifications on those websites; and b) separate commercial websites maintained by Defendants themselves ("Domain Names"). Ciena has submitted lists of known seller identifications, eCommerce Websites, and Domain Names that Defendants use to advertise, offer for sale, and sell counterfeit Ciena products as Exhibits 3B – 3C to Decl. No. 3.

To effectively prevent Defendants from continuing their wrongful activities while this case is pending, and preserve their assets for potential equitable relief, Ciena seeks an order freezing Defendants' seller identifications and Domain Names to ensure that they cannot be transferred or redirected, including those that are presently known and any others discovered in the case. Ciena further requests that the order transfer control of the Domain Names to a U.S.-based registrar of Ciena's choice pending final resolution of this action. Ciena also requests that such order call for redirecting the Domain Names to notice of this case in order to prevent further irreparable harm from Defendants' counterfeiting activities, and ensure they receive prompt notice of this action.

Counterfeiters operating online can, and often will, as soon as they receive notice of litigation, take steps to conceal their activities and move their illegal businesses to other online channels to thwart plaintiffs' ability to obtain and courts' ability to award meaningful relief, e.g., modifying domain name registrations, redirecting visitors to new seller identifications or domain names, and/or transferring ownership of seller identifications and domain names. *See* Decl. No. 1 ¶ 20. Thus, in cases involving online counterfeiters, district courts in the Ninth Circuit often grant preliminary orders freezing counterfeiters' domain names and seller identifications used on eCommerce websites, and granting the other relief sought by Ciena. *See, e.g., Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C06-6572JSW (MEJ), 2007 WL 4973848, at *10 (N.D. Cal. Dec. 6, 2007), *report and recommendation adopted as modified sub nom. Williams-Sonoma, Inc. v. Online Mktg. Servs., Ltd.*, No. C 06-06572 JSW, 2008 WL 596251 (N.D. Cal. Mar. 4, 2008) (temporarily barring sale or transfer of defendants' domain names); *Spy Optic Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, No. CV 17-7649 DSF (KSx), 2017 WL 10592133, at *2–3 (C.D. Cal. Nov. 27, 2017) (barring transfer of defendants' "Internet based e-commerce store website businesses under their seller IDs"); *Chanel, Inc. v. eukuk.com*, No. 2:11-CV-01508-KJD, 2011 WL 6955734, at *5–6 (D. Nev. Dec. 28, 2011) (injunction: a) barring

1  defendants from transferring their domain names; b) directing domain name registrars to transfer

2  to plaintiff's counsel, for deposit with the court, domain name certificates; c) directing registrars

3  and top-level domain registries to change domain name registrar to GoDaddy.com; d) directing

4  GoDaddy.com to redirect domain names to copy of complaints and other documents from the

5  case; e) locking domain names from any modification or deletion by registrars or defendants); *Las*

6  *Vegas Sands Corp. v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1082 (D. Nev. Jan. 9, 2019) (ordering

7  domain name registrar and registries to maintain infringing domain names "on hold and lock").

8      The Lanham Act also expressly provides that in certain cases of online trademark

9  infringement, domain name registrars, who control the transfer of domain names, must deposit

10  domain name certificates with the court. *See* 15 U.S.C. § 1114(2)(D); 15 U.S.C. § 1125(d)(2). An

11  order barring Defendants from transferring their seller identifications and Domain Names,

12  requiring transfer of control of such domain names to a U.S.-based registrar of Ciena's choice

13  (while legal ownership remains with Defendants), and requiring deposit of domain name

14  certificates with the Court, would impose no real burden on Defendants. At the same time, it

15  would ensure that ownership of the domain names cannot be changed until this action is resolved

16  on the merits, thereby maintaining the potential for Ciena to obtain full relief.

17      Ciena also seeks to have Defendants' Domain Names automatically redirect to a website

18  that provides notice of and access to filings in this action, or, alternatively, disable such websites.

19  Such preliminary relief has been granted in cases involving online counterfeiters. *See, e.g.,*

20  *Chanel*, 2011 WL 6955734, at *5–6 (directing registrar to redirect domain names to webpage with

21  copy of documents from the action); *Asmodus, Inc. v. Junbiao Ou*, No. EDCV 16-2511 JGB

22  (DTBx), 2017 WL 2954360, at *5–6, 19 (C.D. Cal. May 12, 2017) (ordering defendant to post

23  notice on its websites); *Otter Prod., LLC v. Anke Grp. Indus. Ltd.*, No. 2:13-CV-00029-MMD-

24  RJJ, 2013 WL 5910882, at *4 (D. Nev. Jan. 8, 2013) (ordering any web hosting company, domain

25  name registry, and/or domain name registrar getting notice to remove counterfeit and infringing

26  products from defendant's website or alternatively to disable access to the website).

27      Redirecting (or at least disabling) Defendants' domain names would help prevent further

28  infringement while this case proceeds, as Defendants could no longer advertise and sell counterfeit

Ciena transceivers through those channels. Redirecting those domain names to notice of and filings from this case would also ensure that each Defendant receives prompt notice of this case and the relief sought by Ciena, as they would see it upon visiting their own websites. And as noted above, Defendants cannot complain about the potential impact of such relief, as the only hardship would be lost profits from infringing activities. *See supra* § IV–A–3.

### 3. The Court Should Issue an Order Barring Access to Defendants' Listings and Preventing Fulfillment of Further Sales of Defendants' Products with CIENA Marks

Ciena requests an order preventing Defendants from accessing their listings of counterfeit Ciena products through their seller identifications on online marketplaces—including, but not limited to, Alibaba—and barring third parties from assisting in further orders for such products. Specifically, Ciena requests that the Court order that any eCommerce Website provided with notice disable access to any such listings, advertisements, or images by Defendants, and that such marketplaces stop providing any service or payment to any of the Defendants that may facilitate their advertising, sales, and distribution of any such purported Ciena products. Ciena also requests an order requiring Internet search engines such as Google, Bing, and Yahoo ("Internet Search Engines"), to remove from their indexes and search results any of the identified Domain Names or eCommerce Website listings, or other webpages owned or controlled by Defendants and associated with advertising, offering for sale, and selling of purported Ciena products. Ciena also requests that any third party that provides shipping services for Defendants' sales of purported Ciena products ("Common Carriers") be restrained from fulfilling any pending, or from accepting any future, shipments by Defendants, and be ordered to sequester and turn over to Ciena any of Defendants' purported Ciena products in the Common Carriers' possession, custody, or control.

Courts in this Circuit have granted the same and similar kinds of relief in cases involving counterfeiters who use online marketplaces as an intermediary to advertise and sell their fraudulent goods. *See, e.g., Talavera Hair Prod.*, 2018 WL 3413866, at *6-7 (granting TRO barring Internet marketplace website operators from providing access to listings of Defendants' infringing products via the eCommerce stores under their respective Seller IDs and compelling removal of infringing material from search engines); *Spy Optic*, 2017 WL 10592133, at *2–3

1   (granting preliminary injunction requiring eBay and PayPal to restrain and divert funds from

2   infringing sales and compelling removal of infringing material from search engines).

3        Ciena has demonstrated that Defendants are using the CIENA Marks and/or selling

4   counterfeit Ciena products without authorization. The requested relief is necessary to effectively

5   prevent Defendants from continuing their advertising, sales, and distribution of counterfeit and

6   infringing Ciena products while this case is pending, either through the existing seller

7   identifications and marketplaces or by simply redirecting traffic to new identifications on such

8   marketplaces. As noted above, any additional infringement would irreparably harm Ciena. Any

9   hardship Defendants might claim from the requested relief should be disregarded, and in any event

10  is outweighed by Ciena's interest in removing counterfeit products from the market, and by the

11  public interest in avoiding confusion and inferior and potentially dangerous counterfeits.

12  Therefore, the Court should grant the requested relief.

13       **D.      The Court Should Permit Ciena to Conduct Expedited Discovery**

14       Ciena seeks expedited discovery to investigate and root out the ongoing manufacturing,

15  advertising, selling, and distribution of counterfeit Ciena transceivers. Courts have discretion to

16  expedite discovery, particularly in cases where plaintiffs seek temporary or preliminary injunctive

17  relief. *See* Fed. R. Civ. P. 26(d) (allowing for expedited discovery "by court order") and Advisory

18  Comm. Note on 1993 Amendment (stating "[d]iscovery can begin earlier" and "[t]his will be

19  appropriate in some cases, such as those involving requests for a preliminary injunction").

20  Expedited discovery can be granted for good cause "where the need for expedited discovery, in

21  consideration of the administration of justice, outweighs the prejudice to the responding party,"

22  and "good cause is frequently found in cases involving claims of infringement and unfair

23  competition." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

24       Courts in the Ninth Circuit have found good cause for expedited discovery to enable

25  plaintiffs in counterfeiting cases to identify: 1) accounts used for and transactions associated with

26  infringing sales; 2) original sources of and pending shipments of counterfeit products; and 3) other

27  parties involved in counterfeiting activities. *See Spy Optic*, 2017 WL 10592133, at *2 (ordering

28  eBay and PayPal to identify all funds transmitted to Defendants' accounts and to provide plaintiffs

with data and accounting of all funds, accounts, and transactions); *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (Ex), 2015 WL 6680807, at *11 (C.D. Cal. Oct. 19, 2015) (granting expedited discovery to ascertain sources of the counterfeit products and learn of pending shipments of such products); *Sas v. Sawabeh Info. Servs. Co.*, No. CV 11-04147 GAF (MANx), 2011 WL 13130013, at *6–7 (C.D. Cal. May 17, 2011) (granting expedited discovery to get evidence for preliminary injunction, identify others involved in counterfeiting, and preserve evidence). None of these cases involved counterfeit products as important as networking devices used in critical infrastructure like the Ciena Transceivers at issue here.

Ciena seeks three types of expedited discovery. First, to identify other party(ies) from whom Defendants bought or to whom they sold counterfeit Ciena transceivers, Ciena seeks from each Defendant documents sufficient to show the names, addresses, and other contact information of all individuals and entities that each Defendant bought Ciena transceivers from and/or sold them to, along with quantities and prices of all such purchases and sales. Second, Ciena seeks from any third party providing services to Defendants, e.g., any eCommerce Website, search engine, Common Carrier, or financial institution or service, documents concerning: 1) contact information of each Defendant and all entities and individuals associated or acting in concert therewith; 2) any accounts owned or controlled by each Defendant and all entities and individuals associated or acting in concert therewith; and 3) each Defendant's operations, payment methods, transportation, and listing history concerning purported Ciena products. Discovery of these entities and individuals and their accounts and services is necessary to ensure that Defendants' unlawful activities will be contained and that Ciena can promptly identify the full scope of infringing activities connected to Defendants. Lastly, Ciena seeks disclosure of the identities and contact information of the owners of the identified seller identifications and registrants of the identified Domain Names, to the extent they are concealed by privacy protections on eCommerce Websites or with domain name registrars.

There is good cause for such expedited discovery to aid the Court's consideration of a preliminary injunction, and to ensure that Ciena can identify the full scope of infringing activities and immediately halt the manufacture and distribution of counterfeit products and resulting

1    irreparable harm while this case is pending. Ciena also needs it to be able to identify potential

2    sources for equitable relief. The requested discovery is narrowly focused and the documents

3    should be easily identifiable, while the need outweighs any minimal prejudice to Defendants from

4    having to produce these indisputably discoverable documents sooner rather than on the normal

5    timeline of discovery. Thus, the Court should grant the requested expedited discovery.

6         **E.      The Court Should Authorize Alternative Service of Process**

7              Ciena requests an order authorizing it to serve Defendants by email because of the urgency

8    involved in this matter, and the extreme difficulty and delays in effecting service in China through

9    the Hague Convention, as well as the additional obstacles posed by the COVID-19 emergency.

10   For defendants located in foreign countries, courts are permitted to authorize service of process

11   "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). The only

12   requirements under Rule 4(f)(3) are that service be directed by the court and not prohibited by

13   international agreement. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir.

14   2002). "[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rules

15   [4(f)(1-2)]" and does not require first attempting other means. *Id.* To provide due process in this

16   context, courts evaluate whether a service method is "'reasonably calculated, under all the

17   circumstances, to apprise interested parties of the pendency of the action and afford them an

18   opportunity to present their objections.'" *Id.* at 1016 (quoting *Mullane v. Cent. Hanover Bank &*

19   *Trust Co.,* 339 U.S. 306, 314 (1950)). In *Rio*, the Ninth Circuit agreed that service by email was

20   appropriate, particularly where the defendant conducted its business by email. *Id.* at 1017-18.

21             Service by email on defendants in China is not barred by any international agreement.

22   *Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896-LHK, 2017 WL 4536417,

23   at *4 (N.D. Cal. Oct. 11, 2017). Courts in this district have authorized email service and found that

24   it is reasonably calculated to provide notice to foreign defendants, including defendants based in

25   China, where receipt is confirmed, the email addresses were previously used to communicate with

26   the plaintiffs, or the defendants operate online and use email for their businesses. *Id.* at *5-6

27   (affirming that email service on defendants in China was sufficient where receipt confirmed);

28   *Carson v. Griffin*, No. 13-CV-0520 KAW, 2013 WL 2403601, at *1-2 (N.D. Cal. May 31, 2013)

(authorizing service by email where the plaintiff previously corresponded with the defendants via email); *Jenkins v. Pooke*, No. C 07-03112 JSW, 2009 WL 412987, at *2-3 (N.D. Cal. Feb. 17, 2009) (same); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at *1-2 (N.D. Cal. Mar. 27, 2012) (authorizing email service, including in Hong Kong, where defendants operated online and relied on email communications for their businesses).

In the present case, Defendants are based in China and operate Internet-based businesses trafficking in counterfeit Ciena products, they provide email addresses for communication, and they ultimately negotiated and consummated transactions for the infringing products obtained by Ciena's consultant via email. *See* Decl. No. 3 ¶¶ 4, 7-11, 18-24. Email service is appropriate and important in the present case because of the urgency in shutting down sales of inferior transceivers that threaten Ciena's reputation and the integrity of critical U.S. infrastructure that relies on such products. At the same time, while China has signed the Hague Convention on Service, district courts have recognized that China often obstructs and substantially delays service under that process for many months. *See Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-CV-06932-MMC, 2018 WL 6069646, at *1–2 (N.D. Cal. Nov. 20, 2018); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 338 (S.D.N.Y. 2018); *see also* https://www.iam-media.com/frandseps/suing-chinese-entity-in-the-united-states-expect-two-year-wait-serve-process (reporting it can take 1-2 years to effect service in China through the Hague Convention process).

### F.     The Court Should Not Require Ciena to Post a Bond to Secure the Injunctive Relief, or Alternatively, Should Set It at No More Than $10,000

"The district court is afforded wide discretion in setting the amount of the bond, [] and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (internal citations omitted); *see also Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *17 (N.D. Cal. Apr. 12, 2019) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *Cuviello v. City of Oakland*, No. C 06-

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

05517 MHP (EMC), 2007 WL 2349325, at *8 (N.D. Cal. Aug. 15, 2007) (recommending no bond be required in part because there was no proof of likelihood of harm to the party enjoined).

Because of the clear evidence of Defendants' counterfeiting, infringement, and unfair competition, Ciena requests that the Court dispense with the filing of a bond. If the Court deems a bond appropriate, then Ciena requests that a bond of no more than $10,000 would be sufficient, as ordered in similar cases issuing similar injunctive relief. *See Ubiquiti Networks*, 2012 WL 2343670, at *17; *see also Microsoft Corp.*, 2017 WL 4536417, at *2.

## V.        CONCLUSION

As shown above, Defendants are counterfeiting Ciena's products and marks, risking irreparable harm to its reputation and risking the functionality of critical U.S. infrastructure. As it did in response to Cisco's substantially similar motion against the same Defendants engaging in virtually identical conduct against Ciena, the Court should grant Ciena's motion for a TRO and issue an order to show cause for a preliminary injunction barring further infringement, as well as the other relief requested herein.

DATED:  August 6, 2020                                       Respectfully submitted,

                                        BARTKO ZANKEL BUNZEL & MILLER
                                        A Professional Law Corporation


                              By:   _____
                                        PATRICK M. RYAN
                                        Attorneys for Plaintiffs
                                        CISCO SYSTEMS, INC.,
                                        CISCO TECHNOLOGY, INC. and
                                        CIENA CORPORATION

PLAINTIFF CIENA CORP.'S *EX PARTE* MOTION FOR, & MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF, TRO & ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION